# GARFUNKEL WILD, P.C.
## ATTORNEYS AT LAW

111 GREAT NECK ROAD • GREAT NECK, NEW YORK 11021
TEL (516) 393-2200 • FAX (516) 466-5964
www.garfunkelwild.com

LAUREN M. LEVINE
Partner
Licensed in NY, NJ
Email: llevine@garfunkelwild.com
Direct Dial: (516) 393-2240

FILE NO.: 12118.0068

March 9, 2017

**By ECF**

The Hon. Vernon S. Broderick
United States District Judge
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Plaintiff is directed to file a letter response to Defendants' pre-motion letter, (Doc. 11), on or before March 17, 2017 in accordance with my individual rules.

**SO ORDERED:**

*/s/ Vernon Broderick*

HON. VERNON S. BRODERICK 3/15/2017
UNITED STATES DISTRICT JUDGE

Re: *Patricia Mann-Nabel v. Westchester*
Docket No. 16-CV-9382

Dear Judge Broderick:

As counsel for Westchester Medical Center and Denise Davis (collectively, the "Hospital") in the referenced lawsuit, we respectfully request a pre-motion conference in accordance with Your Honor's individual rules. The Hospital seeks pre-answer dismissal of certain claims in this matter because such claims are fundamentally deficient as a matter of law.

**Factual Background**

This is an employment discrimination case. Plaintiff was employed as a Registered Nurse on the night shift at the Hospital from July 1992 until September 2016, when she retired. Plaintiff retired while she was on a medical leave of absence that began in April 2016.

In the months preceding her leave of absence, Plaintiff exhibited performance deficiencies that had the potential to compromise both patient and staff safety. As a result, Plaintiff's supervisor, Ms. Davis, transferred her to the day shift, where she would not be one of only two nurses on duty as she had been on the night shift. Plaintiff also received increased supervision to ensure that she understood the protocols for monitoring patients and addressing issues arising on her unit. Following several weeks on the day shift, Plaintiff resumed night-shift duty. Unfortunately, however, her performance issues continued, causing her to receive a two-day suspension and be switched back to the day shift. While assigned to the day shift, Plaintiff went on a medical leave of absence in April 2016. Although it was understood that Plaintiff would be returning to work following her leave of absence, she had yet to return when the Hospital was notified that she retired in September 2016.

Plaintiff's Complaint alleges violations of the Americans With Disabilities Act ("ADA") and the New York State Human Rights Law ("NYSHRL"), and also alleges Intentional Infliction of Emotional Distress ("IIED") and Tortious Interference With Business Relations against Ms. Davis. Specifically, Plaintiff alleges that the Hospital discriminated against her by failing to provide a reasonable accommodation and purportedly terminating her employment in violation of the ADA and NYSHRL. Plaintiff also alleges tortious interference and IIED against Ms. Davis, alleging that she subjected Plaintiff to increased monitoring and changed her shift assignment. As set forth below, based upon the applicable law, Plaintiff's causes of action for IIED and tortious interference are fundamentally unsustainable as a matter of law. Additionally, Plaintiff's allegations asserting that her employment was wrongfully terminated are conclusively contradicted by the fact that she retired.

**Intentional Infliction of Emotional Distress**

Plaintiff's claim for IIED against Ms. Davis is unsupportable as a matter of law. To successfully state this claim, Plaintiff must allege: (i) extreme and outrageous conduct; (ii) intent to cause severe emotional distress; (iii) a causal connection between the conduct and the plaintiff's injury; and (iv) severe emotional distress.

In particular, "extreme and outrageous conduct" must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Sesto v. Slaine*, 171 F. Supp. 3d (S.D.N.Y. 2016) ("when pleading intentional infliction of emotional distress, the bar is extremely high, and this highly disfavored cause of action is almost never successful"). Claims for intentional infliction of emotional distress are routinely dismissed during pre-answer motion practice in employment discrimination cases because "acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities" are not considered sufficiently outrageous to sustain such a claim. *Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566 (E.D.N.Y. 2011). Indeed, except where such claims are accompanied by allegations of sex discrimination or battery, courts routinely dismiss them in the employment context. *Lyadette v. Bronx Overall Economic Development Corp.*, 2001 WL 180055 (S.D.N.Y. 2001). Here, Plaintiff's entire IIED claim is based on her allegations that Ms. Davis monitored her performance and switched her shift.

Against this background, it is clear that the conduct described in Plaintiffs' Complaint does not even begin to rise to the actionable level of outrageous, extreme, indecent, atrocious or intolerable and, likewise, that even under the most favorable view of her claim, she cannot sustain a prima facie case.

**Tortious Interference With Business Relations**

Plaintiff's claim alleging tortious interference with business relations against Ms. Davis also cannot stand, as she alleges only that Ms. Davis purportedly interfered with her career by allegedly monitoring her performance, changing her shift and failing to accommodate her, all of which alleged actions relate solely to Plaintiff. In order to set forth a claim for tortious interference, a plaintiff is required to allege conduct directed by the defendant toward a third party, rather than directed toward herself. *See, e.g., Plasticware, LLC v. Flint Hills Resources, LP*, 852 F. Supp. 2d 398 (S.D.N.Y. 2012) (conduct constituting tortious interference with business relations is, by definition, conduct directed not

at the plaintiff, but at the party with whom the plaintiff has or seeks a relationship). Plaintiff, however, fails to allege a single act directed towards anyone other than herself.

Moreover, it is well-settled that even where the plaintiff does allege an act directed toward a party other than herself, a claim of tortious interference against another employee requires a showing that the employee acted outside the scope of her authority by inducing the employer to terminate. *Kanhoye v. Altana*, 686 F. Supp. 2d 199 (E.D.N.Y. 2009). A supervisor is only considered to have acted outside the scope of her employment if there is evidence that her interference involved independent tortious acts such as fraud or misrepresentations, or that she acted purely from malice or self-interest. *Id.* Alleged violations of anti-discrimination laws, which are all that Plaintiff puts forth, are not considered tortious acts.[1] *Id.* Indeed, Plaintiff alleges no facts whatsoever to suggest that Ms. Davis stepped outside the scope of her supervisory role, as monitoring Plaintiff's performance and assigning her shifts were Ms. Davis's direct responsibility as Plaintiff's supervisor. Accordingly, Plaintiff's tortious interference claim must also fail.

### Plaintiff's Employment Was Not Terminated

Plaintiff's allegation that the Hospital terminated her employment is false. Ms. Mann-Nabel requested, and was granted, a leave of absence in April 2016. Then, in September 2016, she retired. At no point did the Hospital terminate her employment.

Plaintiff claims that in April 2016, she was told by her supervisor that she could either retire early or have her employment terminated and when she refused to retire, her employment was terminated. However, the record belies Plaintiff's claim that she was ever terminated. Indeed, all of the documentary evidence, including correspondence, personnel forms and Plaintiff's own request for retirement, shows that she retired. Moreover, noticeably absent is any attempt by Plaintiff to grieve this purported termination, yet she filed a union grievance regarding her two-day suspension.[2]

Because the Hospital's submission of documentary evidence would likely necessitate conversion of its dismissal motion to a motion for summary judgment under Federal Rule 56, the Hospital respectfully requests the Court's guidance as to how to proceed regarding this issue so that the parties can avoid unnecessary litigation on this claim.

* * *

Based on the above, the Hospital respectfully request a pre-motion conference regarding its motion to dismiss and potential summary judgment motion.

Respectfully submitted,

/s/Lauren M. Levine

Lauren M. Levine

cc: All Counsel Of Record (*By ECF*)

---

[1] The Hospital denies any and all allegations of discriminatory actions directed toward Plaintiff.
[2] Notably, Plaintiff did not follow the applicable policy for disputing an alleged adverse employment action.

GARFUNKEL WILD, P.C.