# THE HARMAN FIRM, LLP
**Attorneys & Counselors At Law**
www.theharmanfirm.com

March 17, 2017

<u>Via ECF</u>

The Hon. Vernon S. Broderick
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      **Re:** *Mann-Nabel v. Westchester Medical Center*, **16 CV 9382**

Dear Judge Broderick:

      We represent Patricia Mann-Nabel in the above-referenced action. We submit this letter in response to Defendants Westchester Medical Center ("WMC") and Denise Davis's March 9, 2017 letter requesting a premotion conference in anticipation of their motion to dismiss "certain claims" under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**I.    Factual Background**

      Ms. Mann-Nabel is diagnosed with Bipolar I Disorder ("BD"). On July 20, 1992, WMC hired Ms. Mann-Nabel as an OB/GYN Registered Nurse. Ms. Mann-Nabel's job responsibilities included patient and infant assessment and delegating tasks to other nursing staff to care for acute and critically ill patients. Throughout the over 20 years that she was employed by WMC, Ms. Mann-Nabel was a dedicated and reliable employee who consistently fulfilled all of her job responsibilities.

      In 2009, Denise Davis, WMC's Deputy Director of Nursing, became Ms. Mann-Nabel's supervisor. In or around summer 2015, when Ms. Mann-Nabel applied for intermittent Family and Medical Leave Act ("FMLA") leave due to a chronic serious health condition (i.e., her BD), Ms. Mann-Nabel disclosed her BD diagnosis to WMC and discussed the details of her condition with WMC. After Ms. Davis learned of Ms. Mann-Nabel's disability, Ms. Davis began treating Ms. Mann-Nabel less well than other employees.

      In and around early February 2016, Ms. Barnum told Ms. Mann-Nabel that her schedule was being changed. There are two shifts for RNs at WMC: 7:00 a.m. to 7:00 p.m. (the "day shift") and 7:00 p.m. to 7:00 a.m. (the "night shift"). For 18 years, Ms. Mann-Nabel had worked the night shift. Although she had never previously received any complaints, warnings, or discipline related to her charting, Ms. Mann-Nabel was now told that she would have to work the day shift so that her supervisors could better "monitor [her] charting."

      On February 5, 2016, Ms. Mann-Nabel's psychiatrist and therapist sent a letter to Allyson Chamberlaine (WMC's FMLA Program Overseer) and Christine La Perche, requesting that Ms.

Mann-Nabel be returned to the night shift to accommodate her disability. They warned that working the day shift was likely to have a serious negative impact on Ms. Mann-Nabel's health, as "[s]leep disturbance and circadian dysregulation are critical pathophysiological elements" in BD. Specifically, Ms. Mann-Nabel's doctors expressed concerns that the schedule change could trigger an episode of mania or depression, stating explicitly that "Ms. Mann-Nabel is much more vulnerable to a recurrence of mania and/or depression due to change in her working hours." Ms. Davis, however, continued to ignore Ms. Mann-Nabel's doctors' instructions and dismissed Ms. Mann-Nabel's second request for a disability-related accommodation. Disregarding her obligation to begin the interactive process, Ms. Davis responded only, "You still have to work days, Trish." Ms. Mann-Nabel returned to work on February 19, 2016, now scheduled for the day shift.

After making the switch to the day shift, Ms. Mann-Nabel's BD symptoms worsened significantly, just as her psychiatrist and therapist had warned they would. Ms. Mann-Nabel began experiencing sleeplessness, nervousness, anxiety, depression, paranoia, and difficulty concentrating. Ultimately, Ms. Mann-Nabel's schedule change and Ms. Davis' discriminatory treatment triggered a BD episode for which Ms. Mann-Nabel needed to take FMLA leave from March 4, 2016, to March 16, 2016.

On April 18, 2016, Ms. Mann-Nabel became ill at work and was sent home. She was told by Ms. Davis that she would need a doctors' note to be allowed to return to work. As such, Ms. Mann-Nabel went to her doctor on the following day, April 19, 2016, so that she could obtain the required note. Upon Ms. Mann-Nabel's return to work on April 20, 2016, Ms. Davis called Ms. Mann-Nabel in for a meeting, during which she informed Ms. Mann-Nabel that she could either resign or be terminated.

## II. Intentional Infliction of Emotional Distress and Tortious Interference with Business Relations

Plaintiff consents to stipulate to withdraw her claim for intentional infliction of emotional distress and tortious interference with business relations.

## III. Plaintiff's Unlawful Termination

Defendants' letter is far from clear as to which claims they intend to move to dismiss; they argue that "certain claims" should be dismissed because "Plaintiff's allegation that the Hospital terminated her employment is false." Defendants purport to have have documents—"correspondence, personnel forms, and her own request for retirement"—that belie Plaintiff's allegation that Defendants forced her to resign by giving her the "choice" to either resign or be terminated. Any documents Defendants might have are irrelevant, as they would be procedurally improper to rely on; it is well-established law that a court must accept all factual allegations of the complaint as true and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009); *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009). Defendants' attempt to circumvent binding authority should be denied.

Further, Plaintiff's counsel has not seen, nor have Defendants provided, any such documents. Therefore, Plaintiff cannot respond to this portion of Defendants' letter, except to state that the facts, as pled in the Complaint, clearly support an unlawful termination claim. *See Bancorp Services, LLC & Addle Management LLC, v. American General Life Insurance Company*, No. 14-CV-9687 (VEC), 2016 WL 4916969, at *5 (S.D.N.Y. Feb. 11, 2016) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Additionally, Defendants concede that the use of any documents not integral to the Complaint would require the Court to convert their anticipated motion to dismiss under Rule 12(b)(6) into a motion for summary judgment under Rule 56. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004). Defendants have not provided any reason or way for the Court to deviate from the Rules and binding authority prohibiting the use of non-integral documents in a motion to dismiss. As such, the Court should direct Defendants to file an answer by a date certain. After discovery, Defendants may file a motion for summary judgment, if they are still inclined to do so.

Finally, Defendants' choice to only now disclose that they purportedly have these documents is troubling. Plaintiff sent pre-litigation letters to Defendants on June 20, 2016, and August 16, 2016, to which Defendants did not respond. After this action was commenced on December 5, 2016, Defendants reached out to Plaintiffs' counsel, but only to request additional time to answer or otherwise move. Then, in a letter dated January 23, 2017, Defendants simply announced the strengths of their defenses, without providing any documents in support. Upon receipt of that letter, Plaintiff's counsel requested that Defendants produce any such documents or explain their defenses, to which Defendants again declined to respond. As such, Plaintiff afforded Defendants with ample opportunity to resolve this matter before litigation; the Court should not delay the action now based on Defendants' unsubstantiated claims.

### IV.     Conclusion

As Plaintiff will withdraw her intentional infliction of emotional distress and tortious interference with business relations claims, and Defendants concede that any motion to dismiss the remaining claims would be impossible without introducing non-integral documents, the Court should deny Defendants' request for a premotion conference and direct them to submit an answer.

Thank you for Your Honor's time and attention to this matter.

Respectfully submitted,

Walker G. Harman, Jr.

cc:     Lauren M. Levine, Esq. (via ECF)